AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| Nicholas Andrew McCabe | ) | 2:25-mj-1267-NPM |
| | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ September 28, 2025 _____ in the county of _____ Lee _____ in the

_____ Middle _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1204 | International Parental Kidnapping |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_/s/ Timothy Dugan_
_Complainant's signature_

Timothy Dugan, Task Force Officer, FBI
_Printed name and title_

Sworn to before me over the telephone or other reliable electronic means and signed by me
pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: _October 9, 2025_

_Judge's signature_

City and state: _____ Fort Myers, Florida _____

NICHOLAS P. MIZELL, U.S. MAGISTRATE JUDGE
_Printed name and title_

## AFFIDAVIT IN SIPPORT OF CRIMINAL COMPLAINT

I, Timothy Dugan, being duly sworn, states as follows:

## INTRODUCTION

1.      I am currently a Deputy Sheriff with the Lee County Sheriff's Office
(LCSO) and serve as a Task Force Officer with the Federal Bureau of Investigation
(FBI). With over 25 years of experience in law enforcement, I have completed more
than one thousand hours of training in major crime investigations. My investigative
experience spans economic crimes, auto theft, narcotics, human trafficking, domestic
terrorism, kidnapping, and property crimes. I have also participated in the execution
of over 300 search warrants and contributed to the seizure of evidence in various
criminal cases. Additionally, I have received specialized training in targeted violence,
further enhancing my expertise in the areas I have worked. I am assigned to the
Tampa Field Office - Fort Myers Resident Agency, where I am designated to a
counterterrorism squad that investigates violations of federal law, specifically
domestic terrorism which includes racially motivated violent extremism, anti-
government violent extremism, nihilistic violent extremism and hate crimes. During
my career as a law enforcement officer, I have received specialized training in
targeted violence and have gained experience in the listed violations in this affidavit.

2.      Through my training and experience, I have become familiar with
investigations involving the use of telephone records and bills, financial records,
ledgers, and other documents. Based on my training and experience, I can attest that

individuals involved in committing crimes often use telephones and other electronic devices to discuss and facilitate their illegal activities.

3.    During my law enforcement career, I have utilized court-authorized cell phone location information, wire and electronic communication interceptions and records, and Global Positioning System (GPS) tracking information in the investigation of criminal offenses.

4.    This affidavit is submitted in support of a criminal complaint charging NICHOLAS ANDREW MCCABE with violating 18 U.S.C. § 1204 (International Parental Kidnapping) on or about September 28, 2025. The minor child and the custodial parent reside in the Middle District of Florida.

5.    The statements contained in this affidavit are based on my personal knowledge, as well as information relayed to me by other law enforcement officials and civilians in this investigation. Because this affidavit is submitted for the limited purpose of obtaining a criminal complaint for MCCABE, I have not included each and every fact known to me relating to the underlying investigation.   Rather, I have set forth only the facts that I believe are necessary to support probable cause for the issuance of a criminal complaint against MCCABE for the above-described criminal offense.

## PROBABLE CAUSE

6.    McCabe and P.M. were married on January 10, 2023, and they have two minor children.

2

7.      On January 17, 2024, a Petition for Dissolution of Marriage and Other Relief was filed in the Circuit Court of the Twentieth Judicial Circuit, in and for Lee County, Florida.

8.      On September 2, 2025, a Circuit Court Judge in the Circuit Court of the Twentieth Judicial Circuit, in and for Lee County, Florida, entered a Final Judgment of Dissolution of Marriage. The Court adopted an agreed to Parenting Plan. The Judgment provided that the parties agreed that McCabe may take their three-year-old child to Walt Disney World on September 11, 2025. The Court permitted P.M. to restore her name to the former name of P.T. Further included in the Judgment, the Court determined that Florida was the home state of the children at the time that the divorce was initially filed, and Florida is the sole jurisdictional state to determine child custody and visitation. The Parenting Plan provided a time-sharing schedule which permitted McCabe to spend time with the children every other weekend and each Wednesday evening to Thursday morning. The exchanges of the children between the parents were specified to "occur at the children's daycare or school during the regular timesharing schedule. If the exchange occurs on a weekend or holiday, the parties shall exchange at the Waffle House located at 3412 Lee Blvd., unless both parties agree in writing in advance to a different meeting place." Further, the Parenting Plan contained the following provision for foreign and out-of-state travel:

   a. Either parent may travel within the United States with the children during his or her time-sharing. The parent traveling with the children shall give the other parent at least 15 days written notice before traveling out of state unless there is an emergency, and shall provide the

3

other parent with a detailed itinerary, including locations and telephone numbers where the child and parent can be reached at least 7 days before traveling.

b. Either parent may travel out of the country with the children during his or her time-sharing upon 30 days written notice. At least 15 days prior to traveling, the parent shall provide a detailed itinerary, including flight information, specific locations, and telephone numbers where the children and parent may be reached during the trip. Each parent agrees to provide whatever documentation is necessary for the other parent to take the children out of the country. The Mother shall keep the children's passports in her possession when the children are not traveling.

Additionally, the Parenting Plan stated that the children "are scheduled to reside the majority of the time with the Mother. This majority designation is SOLELY for purposes of all other state and federal laws which require such a designation." The Parenting Plan provided that "the children may have electronic communication in the form of Our Family Wizard video calls with the other parent every day at 7:00 p.m. The parent who has the children shall initiate the call to the other parent."

9.      On October 3, 2025, at approximately 5:47 PM, the Lee County Sheriff's Office received a call for service, documented under the call for service number 25-523597, regarding a reported custodial interference.

10.      Deputies responded and contacted the victim, P.M. The victim stated that her ex-husband, Nicholas Andrew McCabe, had violated their court-ordered

4

custody agreement by taking their three-year old minor child, born in December 2021, (CHILD 1) for an extended period of time without permission. P.M. advised that she had last spoken with her son, CHILD 1, approximately a week prior to contacting law enforcement.

11.    Deputy Yulfo responded and made contact with P.M. Deputy Yulfo conducted a preliminary investigation, obtained a sworn written statement, a missing person affidavit, and offered Lee County Sheriff's Office victim's rights information.

12.    Due to the nature of the offense, Detective Berndt and Detective Sanchez of the Lee County Sheriff's Office Violent Crimes Unit were notified, and they responded and assumed control of the investigation. Detective Berndt reviewed the preliminary report, confirmed the elements of custodial interference were met, and receipt of the Lee County Sheriff's Office victim's rights information.

13.    Detective Berndt obtained an audio-recorded sworn statement from the victim. The following is a summation of the statement, and it is not verbatim:

    a. On Wednesday, September 24,2025, McCabe took CHILD 1 to Disney World, and McCabe told P.M. that he would return CHILD 1 on Friday, September 26, 2025.

    b. McCabe called P.M. on Friday, September 26, 2025, and claimed that his vehicle, a white 2015 Chevrolet Camaro, had broken down from overheating.

    c. On Saturday, September 27, 2025, P.M. began believing that she was being lied to by McCabe, so she decided to drive to what she believed was McCabe's address located at 4623 26th Street W, Lehigh Acres, Florida. According to P.M., when she arrived at the residence, she

5

noticed multiple vehicles that did not belong to McCabe parked in the driveway, and she realized that he had been lying to her about his address. P.M. then called her attorney, who in turn contacted McCabe's attorney and obtained the correct address for McCabe of 4625 25th Street SW, Lehigh Acres, Florida. When P.M. went to this address, she found that the residence appeared to be empty.

d. P.M. spoke with McCabe on Sunday, September 28, 2025, and he stated that he would be home later that night. P.M. agreed with McCabe that he would take CHILD 1 to his daycare located in Lehigh Acres, Florida, and that P.M. would pick CHILD 1 up after work. Later that day, McCabe told P.M. that CHILD 1 was sick and would not be attending daycare; instead, McCabe said that he would return CHILD 1 to P.M. when she got off work on Monday, September 29, 2025. P.M. has not heard from McCabe since September 28, 2025.

14.    On September 30, 2025, P.M. filed an Emergency Verified Motion for Child Pick-Up Order in the Circuit Court of the Twentieth Judicial Circuit, in and for Lee County, Florida.

15.    On October 3, 2025, a Circuit Court Judge in the Circuit Court of the Twentieth Judicial Circuit, in and for Lee County, Florida, issued an Order for Pick Up of Minor Children, subsequent to a hearing on P.M.'s Emergency Verified Motion for Child Pick-Up Order. The Court ordered a pick up for CHILD 1, who P.M. had last had contact over video on September 26, 2025. P.M. was given all time-sharing of the minor children until further order of the Court. Further, the Court ordered and directed "any and all sheriffs of the State of Florida (or any other

6

authorized law enforcement officer in this state or in any other state to immediately take into custody [CHILD 1] from anyone who has possession and place the minor children in the physical custody of [P.M.]...."

16.     Detective Berndt and Detective Sanchez responded to P.M.'s residence, located in Lehigh Acres, Florida, to document CHILD 1's bedroom and in an attempt to locate additional evidence that may provide more information.

17.     Detective Berndt attempted to call McCabe multiple times at the phone number P.M. provided as 719-828-5536; however, McCabe's phone was turned off. LCSO Communications completed an exigency request for a continuous ping on McCabe's cellular device. Unfortunately, the current location of McCabe's phone was not revealed. In addition, when detectives learned that McCabe's vehicle, identified as a white 2015 Chevrolet Camero bearing Florida tags JV801R, may be equipped with OnStar and GPS, detectives contacted OnStar. Unfortunately, it was confirmed that McCabe's vehicle did not have tracking capabilities. P.M. provided addresses for McCabe's family members, and welfare checks were conducted. Unfortunately, McCabe's whereabouts was not discovered.

18.     On October 5, 2025, a neighborhood canvass was conducted by Lee County Sheriff Office detectives. None of the neighbors had seen McCabe in over a week. Only one neighbor was located that had spoken to McCabe approximately two weeks prior. McCabe had mentioned to his neighbor that he was behind on his rent and felt he would be evicted soon. A few days after the conversation, the neighbor heard what sounded like McCabe packing up.

19.    Detective Butler conducted interviews with several family members; however, none disclosed that they had any recent contact with McCabe. They were unable to provide a potential location for him or an updated phone number.

20.    Detective Butler authored a state cell phone search warrant for call data records associated to McCabe's cell phone number 719-828-5536 to account provider Verizon Wireless, which was approved by the duty judge and was served to the provider, Verizon, for historical records.

21.    Detective Butler contacted Transportation Security Administration (TSA) in an attempt to acquire purchase information for outgoing domestic flights; however, no information was found as flight logs are purged after seven days.

22.    Contact was made with the National Transportation Vetting Center (NTVC), an agency within Homeland Security that aids in tracking international flights. Due to individuals traveling on commercial airlines having an expectation of privacy, covered under the Privacy Act, law enforcement is obliged to fill out exemption documentation to provide to the NTVC before information, such as flight logs, can be disclosed. Subsequently, NTVC was able to verbally advise that two individuals, matching the names and dates of birth of McCabe and CHILD 1, traveled from Mexico into Europe, ultimately landing in Asia. An adult male, believed to be McCabe, traveled under an Irish passport. Although P.M. is in physical possession of CHILD 1's United States passport, it was later learned that CHILD 1 had traveled using an Irish passport.

23.    On October 6, 2025, confirmation was received from FBI liaison to the Customs and Border Protection (CBP) that flight plans were confirmed for McCabe and CHILD 1 to fly from Tijuana, Mexico to Mexico City on September 28, 2025,

8

on VIVA Aerobus flight 1253. Further, there was a reservation on the same day from Mexico City to Barcelona, Spain on Emirates flight 256. There was a reservation on Emirates Flight 188 for a flight from Barcelona, Spain to Dubai on September 28th, 2025. The reservations were made using McCabe's and CHILD 1's Irish passports.

24.    On October 6, 2025, local law enforcement in Atlanta Georgia were able to obtain security camera footage from the Woods Springs Suites located at 625 Industrial Blvd, McDonough, Georgia. The video snapshots showed Nicholas Andrew McCabe and CHILD 1 in the lobby of the hotel. The front desk clerk was able to verbally confirm that McCabe and CHILD 1 had checked into the hotel, and they checked out of the hotel on September 27, 2025, at approximately 03:40 AM. The bill was paid for in cash.

25.    On October 7, 2025, your Affiant received the requested data records from Verizon that Detective Butler requested via a State Search warrant. All of the information was provided to FBI Cellular Analysis Survey Team (CAST) Special Agent Johnathon Hoyt for data analysis. On this same day Special Agent Hoyt was able to provide a detailed CAST report showing the GPS mapping of McCabe's cell phone. Upon review of the provided Verizon records and CAST report, TFO Dugan was able to positively track the GPS of McCabe's cellphone confirming the travel from Florida to Atlanta, Georgia on September 26, 2025, and outbound from Atlanta International airport on September 27, 2025, arriving at Dulles International airport in Virginia, on September 27, 2025, at approximately 09:10 AM. The GPS then shows travel to San Diego International Airport, in San Diego, California, on September 27, 2025, with approximate arrival time of 11:01 AM. Final GPS data

9

points show McCabe traveling from San Diego, California across the Mexican border and onto the final traceable GPS coordinates at Tijuana International Airport in Mexico, on September 28, 3025 at approximately 07:53 AM.

26.     Through analytical research and License Plate Reader (LPR) reports, it was learned that McCabe's vehicle arrived at the Hartsfield-Jackson Atlanta International Airport on September 27, 2025.

27.     On October 8, 2025, TFO Dugan was able to contact law enforcement at the Hartsfield-Jackson Atlanta International Airport who subsequently located McCabe's vehicle in the airport short term parking, unoccupied with the doors unlocked.  Through the windows of the vehicle, in plain view, law enforcement observed that the vehicle's inside was very cluttered with adult and children's clothes and a child car seat.

28.     Based on observations, evidence, and victim statements obtained during this investigation in its entirety, there is probable cause to believe Nicholas Andrew McCabe did commit the offense of international parental kidnapping, as he removed CHILD 1 from the United States, and McCabe continues to retain CHILD 1 outside the United States with intent to obstruct the lawful exercise of parental rights.

CONCLUSION

29.     Based upon the information set forth above, your Affiant respectfully submits that there is probable cause to believe that Nicholas Andrew McCabe committed the offense of international parental kidnapping, in violation of 18 U.S.C. § 1204.

10

Respectfully submitted,

*/s/ Timothy Dugan*
Timothy Dugan, Task Force Officer
Federal Bureau of Investigation

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) before me this 9th day of October 2025.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

11